## John B. Kemmerer v. John M. Kokendifer.

1. INSTRUCTIONS—*Assuming Facts.*—An instruction which tells the jury " to consider all the facts and circumstances in evidence surrounding the transaction in regard to the releasing the defendant from the obligation to pay the sum claimed to be released," does not assume that the defendant was in fact released.

2. ACCORD AND SATISFACTION—*What Is.*—An agreement to accept a less sum secured, or differently secured, is a good accord and satisfaction.

Assumpsit, for a balance due.     Appeal from the Circuit Court of Christian County; the Hon. JACOB FOUKE, Judge, presiding.     Heard in this court at the November term, 1895.     Affirmed.     Opinion filed May 16, 1896.

TAYLOR & ABRAMS, attorneys for appellant.

JOHN E. HOGAN and FRANK P. DRENNAN, attorneys for appellee.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Appellant, by an instrument under seal, leased to appellee a farm in Christian county for one year from March 1, 1893, at $3.50 per acre, making $565.50, to be paid in two equal installments, one on or before September 1, 1893, and the other on or before January 1, 1894. Without fault on his part the crop turned out to be short. Excepting about two tons of hay, he delivered to appellant all that he raised, which amounted to only $217, leaving a balance of $348. He had been obliged to " buy his things to live on," and to get the means, had mortgaged his team; so that he was then unable to pay or secure that balance or any part of it. They failed to agree upon an arrangement for the next year until some time in April, when a new lease, also under seal, was executed, by which appellee was to pay for that year $697.55, being at the rate of $3.25 per acre with one-half of the back rent added, in two equal installments, on September 1st, and on or before December 25, 1894, respectively.

This sum he paid in full. But appellant claimed there was a further understanding between them, of which nothing was said in the lease, that he was also to pay the remaining half that year if he should make a good crop; and that he did make it.

Appellee having denied that there was such an understanding, and refusing to make payment of that half, this action was brought before a justice of the peace, on the first lease, to recover it.

As appears from the evidence, there being no written

pleadings, the sole defense was accord and satisfaction. The jury below found the issue for the defendant, and the court having overruled a motion for a new trial and rendered judgment on the verdict against the plaintiff for costs, he prosecutes this appeal, mainly on the ground that the finding was not sufficiently supported by the evidence.

He had submitted to appellee a draft of a lease for the second year at a gross sum made up of $3.50 per acre and the whole of the back rent—being nearly $900. Appellee, seeing but little prospect of a living out of the crops with a lien for that amount upon them, declined to accept it. He was willing, however, to keep the land for two years at $3.25 per acre, with one-half of the back rent added, for each. Appellant would not consent to give a lease for more than one year at a time, but agreed to reduce the rate per acre as proposed and put in only one-half of the back rent for that year; which would require a change in the draft already prepared of only the gross amount stated. These terms having been agreed on in a conversation between the parties at a store in Assumption, appellant immediately took the draft to the office of his attorney, who had made it, where appellee soon afterward joined him, and when the necessary change was made they signed it.

The only difference between the parties related to the understanding as to the back rent that was not put in the lease. Appellee testified that in the talk at the store just before it was changed and signed, he told appellant he could not sign it—could not pay so much the first year—but if he (appellant) would let him stay another year he would pay half the back rent, and in 1895 would pay the other half; that appellant then said: "John, I will tell you what I will do. I will go to Birce (his attorney) and have it changed, and if I don't let you stay in 1895 it is enough;" and that he (appellee) signed it, putting in one-half the back rent, under that contract as he understood it, that if the place should be leased to some one else for the next year, he was to leave it and not pay the other half. .

Charles Barrett heard a part of this conversation—quite

enough, in our judgment, to make his statement of its substance corroborate that of appellee. He says "Kokendifer told him if he rented the place another year he would put in the balance of the back rent, and if he didn't he would not. Kemmerer said all right, and they got up and left."

Appellant did not state the terms or substance of the conversation on this point, nor specifically contradict appellee or Bennett as to what was there said; but testified that at the attorney's office appellee "objected to signing the lease because it was drawn for $3.50 and back rent from 1893—$348. He would not agree to pay more than $3.25. If I would agree to change to $3.25 he would agree to sign for half the back rent, and the other if he made a good crop." And the attorney, claiming no more distinct recollection of the language than did Barrett as to the store talk, just as substantially corroborated him. He inferred from their talk, however, that they had previously discussed the terms of the arrangement for that year, and that appellee desired to get the land for still another, which appellant was not then willing to promise him.

Appellee raised an average crop in 1894, but did not get a lease for 1895.

Then the only question of fact was whether the parties understood that appellee, notwithstanding the inclusion of half the back rent in the new lease, was to pay the other half if he made a good crop, as claimed by appellant, or was to be released from all obligation to pay it unless he should get a further lease for 1895, as claimed by appellee.

The direct evidence on that point—all of which is in substance above stated—is thus seen to have been conflicting, and as it appears on the record, pretty evenly balanced; and the preponderance, if any, was to be determined largely by circumstances which the jury and trial judge could observe and properly consider, but we can not. It is, therefore, a case in which a conclusion either way, unanimously reached by the one and deliberately sustained by the other, should be held to establish the fact as found, unless it appears that misunderstanding, prejudice or passion of the jury,

or error of the court, may have materially tended to induce such finding.

It is not suggested that there is anything in the record to impeach the finding except the second instruction given for the defendant, in which the jury were told that in determining the weight of the evidence they had the right to take into consideration not only the testimony of the witnesses, but to weigh it in the light of the circumstances in evidence, and to consider " all the facts and circumstances in evidence, surrounding the transaction in regard to releasing the defendant from the obligation to pay the sum claimed to be released."

The complaint is that by this language the court assumed and told the jury that the defendant was in fact released. If so, the jury was not only released but precluded from a consideration " of the facts and circumstances in evidence surrounding " it or " in regard to " it. But they were told they should consider them, and this must have been for the purpose of determining, from the weight of the evidence, whether the defendant was released from the obligation to pay a certain sum declared to be a sum " claimed " to be released. We think the criticism is too fine, and that the jury could not have been misled by the instruction.

In Post v. The First National Bank of Springfield, 138 Ill. 559 (564), it was said that " the agreement to accept a less sum secured or differently secured, is held to be a good accord and satisfaction," citing 1 Eng. & Am. Ency. of Law, 101 and notes; see, also, 18 Id. 230. And this is a rule of law too familiar to require a further citation of authorities. Here the appellee was indebted to appellant in a certain sum undisputed, for the rent due for 1893. But appellant had no security for the payment of it or any part of it, the crop of that year having all been properly disposed of. Appellee was unable to give any except upon the crop he might raise in 1894, but was not bound to give that, although he was then holding over pending negotiation for a new lease. In this situation it was not unreasonable on the part of appellee to propose the arrangement he says he did, nor

injudicious on that of appellant to accept it. By it he got security for half the debt, by putting it in the lease as part of the rent for that year (R. S., Ch. 80, Sec. 31), which otherwise he would not have had nor been legally entitled to, and might have got it for the remaining half in 1895.

. This, we think, was a good consideration for an agreement to release the latter if he should not give a further lease; and the judgment will therefore be affirmed.